USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Hector Bonifacio,

                    Plaintiff,

          —v—

United States of America, *et al.*,

                    Defendants.

16-cv-8379 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

Pro se Plaintiff Hector Bonifacio brings this action against a slew of federal defendants for the State Department's alleged delay in processing his passport application. He raises several statutory and constitutional claims, and seeks an injunction and substantial monetary relief. The Government has moved to dismiss. For the reasons that follow, the Court GRANTS the Government's motion.

## I.     BACKGROUND

### A. Factual History

The following facts are taken as true at this stage of litigation: Plaintiff Hector Bonifacio was born in the Dominican Republic. Compl., Dkt. No. 37, Ex. D. In 1989, he became an American citizen. Dkt. No. 37, Ex. C (certificate of naturalization); Compl. at 3. A few years later, Bonifacio applied for and was issued a U.S. passport, which was valid from 1991 to 2001. Compl. ¶ 17. In 2004, several years after the first passport expired, he obtained a second passport. *Id.* His second passport expired in 2014. *Id.*

In May 2016, Bonifacio again applied to renew his passport. Compl. ¶ 41. This time, however, he grew dissatisfied by the application process's length, which spanned about eleven

1

months.  During this period, Bonifacio contacted various officials at the State Department asking to receive an update on his application.  *Id.* ¶¶ 42–44.  At various points, officials told him that his application was "still pending" and was "in progress."  *Id.* ¶ 43.  Bonifacio also met with an employee of the New York Passport Office and spoke with a representative in the National Passport Information Center about his concerns.  *Id.* ¶¶ 44–45.  These individuals confirmed that Bonifacio's application was still pending and did not provide reason for the delay.  *Id.*

In March 2017, the Department of State approved Bonifacio's passport application and issued him a renewed passport, which he received that same month.  Compl. ¶ 69 (noting that he received his passport on March 17, 2017, "nearly eleven (11) months" after filing his application); *see also* Dkt. No. 28 at 2.

### B.  Procedural History

In October 2016, while his application for a passport was still pending, Bonifacio began this action.  Dkt. No. 1.  He is pro se.  After the Government moved to dismiss, Bonifacio twice amended his complaint, and filed the operative pleading in July 2017 (three months after his application was approved).  *See* Dkt. No. 37.  The complaint names seven defendants: (1) the United States of America, (2) then-President Barack Obama, (3) then-Secretary of State John Kerry, (4) the United States Department of State, (5) Michele Thoren Bond (then-Assistant Secretary of State for Consular Affairs), (6) the administrator or director of the New York City passport agency (whose name is not identified), (7) and John Kettering (alleged to be a special agent at the State Department).  Compl. ¶¶ 17–26.

In brief, Mr. Bonifacio alleges that the Government inordinately delayed processing his passport application and did so on racial-animus grounds.  *See* Compl. at 4 ("Indeed, rather than making individualized decisions about Plaintiff's passport application, Defendants have adopted a policy that casts unwarranted suspicion of the Plaintiff on the basis of race, look and heavy

accent of Dominican descent, of Latino upbringing and birth in the Caribbean region."). Construing his pleading liberally, as the Court must do at this stage, Mr. Bonifacio alleges that the Government violated four federal statutes. *See* Compl. at 9 (8 U.S.C. § 1503(a)); ¶¶ 63–78 (42 U.S.C. § 1981); *id.* ¶¶ 81–91 (Administrative Procedure Act, 5 U.S.C. § 706); *id.* ¶¶ 92–97 (Mandamus Act, 28 U.S.C. § 1361). And he alleges that the Government violated the Equal Protection Clause, giving rise to a *Bivens* claim. *Id.* ¶¶ 98–106.

As to relief, Mr. Bonifacio seeks a declaration that the Government has violated its obligations and that it "may not employ racists, racial animus, and discrimination against the Plaintiff." Compl. at 29–30. He also seeks injunctive relief requiring the government to issue an "immediate" renewal of his passport. *Id.* ¶¶ 79–80. And Bonifacio seeks money damages, including a "Punitive, Exemplary money damage award . . . in the sum of $1,000 . . . for each day it has taken [to process his application] since two weeks after" he submitted. *Id.* at 30. In support of his claim for damages, Bonifacio avers that the State Department's delay effectively "for[bade] [his] ability and right to travel internationally." Compl. at 8. He also alleges that he "has been adversely affected and aggrieved by the infliction of emotional distress, pain, anxiety and suffering caused by the extremely long delay of nearly (11) months wait to receive the renewed U.S. Passport." Compl. at 19.

In November 2017, the Government moved to dismiss, arguing that all counts should be dismissed either for lack of jurisdiction or for failure to state a claim. Dkt. No. 57. The motion was not fully briefed, however, until almost two years later. *See* Dkt. No. 75. The Government's motion is now before the Court.

## II.     LEGAL STANDARD

A Rule 12(b)(1) motion is a threshold challenge to this Court's subject-matter jurisdiction.  Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Whitmore v. Ark*, 495 U.S. 149, 154 (1990) ("It is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.").  In deciding a 12(b)(1) motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."  *NRDC v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citation omitted).  "[U]nder Rule 12(b)(1), [a court is] permitted to rely on non-conclusory, non-hearsay statements outside the pleadings."  *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

To survive a Rule 12(b)(6) motion, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, "the complaint's factual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible."  *Arista Records, LLC, v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting

4

*Twombly*, 550 U.S. at 555) (internal citations and alterations omitted).  "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Generally, "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" may be considered in assessing whether a claim is sufficient to survive a Rule 12(b)(6) motion.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Additionally, courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "The policy of liberally construing pro se submissions is driven by the understanding that implicit in the right to self-representation is an obligation . . . of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 156–57 (internal quotation marks omitted).

## III.  THE GOVERNMENT'S MOTION IS GRANTED

### A.  The Court Lacks Subject-Matter Jurisdiction Over Several Claims

The Court begins, as it must, with subject-matter jurisdiction.  The Government first argues that because the State Department has issued Mr. Bonifacio a renewed passport, his claims for injunctive and declaratory relief are moot.  Gov't Br. at 8–10.  "It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed.'"  *United States v. Juvenile Male*, 564 U.S. 932, 936

(2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).  "A case becomes moot when it no longer satisfies the 'case or controversy' requirement of Article III, Section 2 of the Constitution."  *United States v. Williams*, 475 F.3d 468, 478 (2d Cir. 2007) (citation omitted); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." (cleaned up)).  Mootness is a jurisdictional defect and deprives a court of the authority to adjudicate a case.  *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994).

Mr. Bonifacio asks the Court to compel the State Department to renew his passport. Reading his complaint liberally, Mr. Bonifacio relies on 28 U.S.C. § 1361, which provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  However, in the operative pleading, Mr. Bonifacio alleges in his complaint that the State Department has *already* renewed his passport.  *See* Compl. at ¶ 69 (alleging that the State Department issued Mr. Bonifacio a renewed passport "on date March 17th, 2017, nearly eleven months" after he submitted his application).  And though the Court limits its review to Mr. Bonifacio's complaint, it also notes that Mr. Bonifacio stated at a status conference before Magistrate Judge Parker that he had already received a renewed passport.  *See* Dkt. No. 28 at 2 (Mr. Bonifacio stating that he now "has a passport" and that the passport was issued on "the 17th of March.").

Mr. Bonifacio's request for mandamus and injunctive relief seeking an order compelling adjudication of his passport application and issuance of a passport is therefore moot.  Because he has already been awarded the relief he seeks, and he alleges as much in his complaint, the Court

lacks power to order the agency to take any further action.  Courts in this circuit have frequently dismissed such claims as moot in this posture.  *See, e.g.*, *Elliott v. U.S. Dep't of State*, 122 F. Supp. 3d 39, 43 (S.D.N.Y. 2015) ("Here, Defendants voluntarily gave Plaintiff the relight he sought.  Plaintiff's Complaint sought 'an order compelling Defendant to adjudicate Plaintiffs application for [a] U.S. passport,' which is exactly what Defendants did without the Court directing them to do so . . . Defendants adjudicated Plaintiff's passport application and issued him a United States passport, prompting the Court to dismiss the case as moot."); *Ogunji v. Kerry*, No. 13-cv-1208 (RMM), 2016 WL 4477745, at *2 (E.D.N.Y. Aug. 25, 2016).  Mr. Bonifacio's claim under 28 U.S.C. § 1361, and related requests for injunctive and declaratory relief, are thus dismissed as moot.

Mr. Bonifacio also seeks relief under 8 U.S.C. § 1503(a), which provides for declaratory relief from a final agency determination denying any right or privilege as a national of the United States, upon grounds of citizenship.  *See Escaler v. United States Citizenship and Immigration Services*, 582 F.3d 288, 291 n.1 (2d Cir. 2009) ("Where some right or privilege of citizenship, e.g. obtaining a United States passport . . . is denied, the plaintiff's citizenship may of course may be litigated [under 8 U.S.C. § 1503(a.)]" (citation omitted)); *see generally Dessouki v. Att'y Gen.*, 915 F.3d 964, 966 (3d Cir. 2019) (noting that § 1503(a) permits individuals to file actions in federal district courts seeking declaration that they are U.S. citizens); *Garcia v. Freeman*, 542 Fed. Appx. 354, 355 (5th Cir. 2013) ("An individual who claims a denial of a right or privilege as a national by any department or independent agency may seek a declaration of citizenship under § 1503(a).").

The law is well-established, however, that "[a] district court does not have jurisdiction to review claims under § 1503(a) where plaintiff has not been denied a right or privilege as a

national of the United States pursuant to a final administrative determination." *Garcia*, 542 Fed. Appx. at 355 (citations omitted). Here, Mr. Bonifacio has not been denied any right or privilege of a U.S. national; to the contrary, he alleges in his pleading that the State Department has *granted* him a privilege afforded to nationals, the issuance of a passport. Compl. ¶ 69. Mr. Bonifacio thus lacks standing to bring a claim under § 1503(a), and this claim too is dismissed for lack of jurisdiction. *See id.*[1]

Next, Mr. Bonifacio seeks money damages under the Federal Tort Claims Act (FTCA). The FTCA waives the United States' sovereign immunity for torts committed by federal employees in certain circumstances. *See* 28 U.S.C. § 1346(b)(1). But this waiver is narrow—the FTCA "operates subject to numerous conditions, each of which must be satisfied four a court to exercise jurisdiction." *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004). One of those conditions is "that a plaintiff must first file an administrative claim with the appropriate federal agency before suing for relief in federal court." *Id.*; *see* 28 U.S.C. § 2675(a). This administrative-exhaustion requirement is jurisdictional and cannot be waived; failure to comply with it mandates dismissal. *See Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97 (2d Cir. 1981). And the Second Circuit has made clear that this "procedural hurdle applies equally to litigants with counsel and to those proceeding *pro se*." *Adeleke*, 355 F.3d at 153; *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).

The exhaustion requirement thus poses a substantial obstacle to Mr. Bonifacio's FTCA claim, as he does not allege that he has exhausted his remedies. *See* Compl. at ¶ 14. Instead,

---

[1] The Court also notes that Mr. Bonifacio has not exhausted his administrative remedies as to this claim, which creates an additional jurisdictional defect under § 1503(a). *See Lainez v. Osuna*, No. 17-cv-2278 (HBP), 2018 WL 1274896, at *4 (S.D.N.Y. Mar. 8, 2018), *aff'd sub nom. Lainez v. McHenry*, 2020 WL 3250973 (2d Cir. June 16, 2020) (dismissing § 1503(a) claim for lack of jurisdiction in part because "plaintiff has again failed to show that he exhausted his administrative remedies before filing this declaratory judgment action.").

Mr. Bonifacio contends that the Government's argument "has no[] basis in law"" and cites *Yung Jin Teung v Dulles*, 229 F.2d 244 (2d Cir. 1956), which he claims "stand[s] for the proposition that once an agency has not resolved an issue for six (6) months the claimant U.S. citizen is free to file a legal action in federal court to seek redress." Dkt. No. 74 at 4; Dkt. No. 73 at 2. However, *Yung Jin Teung* concerns a circumstance in which a U.S. citizen is constructively denied a passport due to delay; here, according to Mr. Bonifacio's own pleading, the agency granted him a passport. *See* 229 F.2d at 246. In addition, Mr. Bonifacio does not allege or argue that he has exhausted his particular FTCA claim. Even construing his pleading liberally, therefore, the Court must dismiss his FTCA claim for lack of jurisdiction. *See also In re Agent Orange Product Liability Litigation*, 818 F.2d 210, 214 (2d Cir. 1987) ("The burden is on the plaintiff to both plead and prove compliance with the statutory requirements" of the FTCA).

Finally, Mr. Bonifacio has sued several government officers in their official capacities. "The shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities." *Dotson*, 398 F.3d at 177. And the United States has not waived the sovereign immunity for officers acting in the manner alleged here, committing purported constitutional violations within the scope of their official capacities. *See Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). The Court thus dismisses Mr. Bonifacio's official-capacity claims, as the United States' sovereign immunity strips the Court of jurisdiction to hear such claims. *Accord Weinstein v. Albright*, No. 00-cv-1193 (JGK), 2000 WL 1154310, at *10 (S.D.N.Y. Aug. 14, 2000); *aff'd*, 261 F.3d 127 (2d Cir. 2001).

**B.  Mr. Bonifacio Has Not Stated Any Other Claim**

The Court turns next to Mr. Bonifacio's remaining statutory and constitutional arguments, and concludes that, even reading his complaint liberally, he has failed to state a claim.

To start, Mr. Bonifacio seeks relief under the Administrative Procedure Act.  Compl. at 6. In particular, he points to 5 U.S.C. § 706(2), which requires reviewing courts to "set aside agency action, findings, and conclusions" if they are, among other things, found to be arbitrary and capricious or unsupported by substantial evidence.  Mr. Bonifacio does not elaborate in detail the basis of his APA claim.  Reading his complaint favorably, however, his argument seems to be that the State Department violated the APA by taking eleven months to decide his passport application.  Specifically, he alleges that he "is eligible to have his United States passport renewal application processed within two to six weeks . . . [as] similarly situated millions of Americans [had done in 2016]."  Compl. ¶ 47.  He also asks the Court "to take judicial notice that to renew a United States Passport for any other U.S. Citizen it only takes approximately 2 weeks."  Compl. at 9.  And in an exhibit to his complaint, Mr. Bonifacio attaches a page from the State Department's website, which states that "ROUTINE SERVICE" of a passport application takes "[a]pproximately 6-8 weeks," and "EXPEDITED SERVICE" takes about "2-3 weeks."  Compl., Ex. L.  Construing his pleading liberally, the Court interprets Mr. Bonifacio's contention to be that the agency's delay was arbitrary and capricious or violative of statutory or regulatory law.  *See also* Compl. ¶ 86.

However, no statute or regulation requires the State Department to make a determination within this timeframe.  Mr. Bonifacio points to no such legal requirement, and the Court finds none upon independent review.  *See generally* 22 U.S.C. §§ 2714, 2714a, 2721 (outlining some

requirements for the issuance of passports, but not imposing any deadline by which the State Department must process applications).  Even if the State Department typically processes passport applications at a quicker speed, nothing compels it to do so—and indeed, the same State Department websites that Mr. Bonifacio appends to his complaint note that "it could take 12 weeks or more to get a passport."  Compl., Ex. J. at 1.  The agency thus did not exceed its statutory or regulatory authority in taking eleven months to process Mr. Bonifacio's application.  Nor does this delay satisfy the high standard for arbitrary and capricious conduct.

Next, Mr. Bonifacio invokes 42 U.S.C. § 1981 as a basis for some of his claims.  This provision provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981(a).  A later amendment to the statute clarified that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment *under color of State law*." (emphasis added).  *Id.* § 1981(c); *Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005).  The color-of-state-law requirement means that 42 U.S.C. § 1981 applies only to state officials—a cause of action does not lie under this provision against individuals acting under federal law.  *Dotson*, 398 F.3d at 162.  Mr. Bonifacio does not allege that any of the defendants acted under the color of state law; to the contrary, the State Department is a federal agency.  Even construing his pleading liberally, therefore, the Court must dismiss his claims under § 1981.  *Accord Nghiem v. U.S. Dept. of Veterans Affairs*, 323 F. App'x 16 (2d Cir. 2009) (Section 1981 applies "only to state actors, and not federal officials"); *Harrison v. Potter*, 323 F. Supp. 2d 593, 604

(S.D.N.Y. 2004) (holding that plaintiff's § 1981 claim against the United States Postal Service failed both because there is no waiver of sovereign immunity for such claims and because § 1981 does not apply to the federal government or federal officials).

Mr. Bonifacio also alleges that the Defendants violated the Fourteenth Amendment's Equal Protection Clause. He contends that the State Department had a "policy, pattern, and practice of subjecting the Plaintiff to racial animus, discrimination and racial bigotry." Compl. ¶ 7. However, these sorts of conclusory allegations of racial animus are plainly insufficient to survive a 12(b)(6) motion. Indeed, Mr. Bonifacio's allegations mirror the very ones that the Supreme Court held insufficient in *Ashcroft v. Iqbal*. 556 U.S. 662, 680–81 (2009) (holding that such allegations do "'not nudge[] [plaintiff's]' claims of invidious discrimination 'across the line from conceivable to plausible'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The Court thus concludes that Mr. Bonifacio's complaint, even when construed liberally, does not adequately plead an equal-protection violation. *Accord Prasad v. City of N.Y.*, 370 Fed. Appx. 163, 165 (2d Cir. 2010) ("Conclusory allegations of discrimination without evidentiary support cannot survive a motion to dismiss." (cleaned up)); *Brown v. Volpe*, No. 15-cv-9004 (PAE), 2017 WL 985895, at *6 (S.D.N.Y. Mar. 13, 2017).

\* \* \* \* \*

The Court sympathizes with Mr. Bonifacio's difficulty in obtaining his passports and the adverse effects he experienced from this delay. *See* Dkt. No. 73 (Mr. Bonifacio noting, in his brief, that the lengthy application process "increased [his] anxiety."). Federal courts, however, possess limited authority to remedy harms, even harms purportedly committed by the federal

government.  Because there is no federal remedy for Mr. Bonifacio's injury, this case must be dismissed.[2]

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS the Government's motion to dismiss. This resolves Dkt. No. 51.

A court should generally grant a pro se plaintiff "leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (cleaned up).  Here, however, Mr. Bonifacio has submitted two amended complaints, for a total of three complaints.  He has thus far failed to state a claim and there is no indication that, if provided with a fourth opportunity for amendment, he would be able to do so.  Accordingly, the Court declines to grant Mr. Bonifacio leave to file a fourth amended complaint, and the Court's dismissal is thus with prejudice.  *See Esposito v. N.Y.*, 355 Fed. Appx. 511, 513 (2d Cir. 2009) ("[I]t would have been futile to give Appellant leave to amend her complaint because she had already amended it twice.").  The Clerk of Court is thus respectfully directed to enter judgment and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Opinion to the *pro se* Plaintiff, and to note that mailing on the public docket.

---

[2] The Court has considered the remainder of Mr. Bonifacio's arguments and finds them to be without merit.  In addition, the Court does not address the Government's multiple other compelling reasons supporting dismissal: that even if an equal-protection violation occurred, no *Bivens* claim extends to this new context, Gov't Br. at 13–20, that certain defendants are absolutely immune from suit, *id.* at 20 n.11, and that all individual defendants have qualified immunity, *id.* at 20–22.

13

SO ORDERED.

Dated:  September 28, 2020
        New York, New York

_____
ALISON J. NATHAN
United States District Judge